UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GORDON HORNER and ANN MARIE HUDSON, individually and on behalf of all others similarly situated,<br><br>                             Plaintiffs,<br><br>          v.<br><br>Little Caesar Enterprises, Inc., Phoenix Nexus Limited Liability Company, Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, and ABC CORPORATIONS 1-100.<br><br>                             Defendants. | No. 5:22-cv-1324-TJM-TWD<br><br>**SETTLEMENT AGREEMENT AND RELEASE** |

This Settlement Agreement and Release, along with all exhibits annexed hereto, ("Agreement") is entered into by and among Gordon Horner and Ann Marie Hudson ("Named Plaintiffs") on behalf of themselves and the members of the "Settlement Class" (as hereinafter defined) and Phoenix Nexus Limited Liability Company, Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, Bartell Rd SY LC LLC, Second St SY LC LLC, State RT SY LC LLC, North ST SY LC LLC, Seventh ST SY LC LLC, Central Ave SY LC LLC, Oswego RD SY LC LLC, and Main St SY LC LLC (the "Phoenix Nexus Defendants"(the "Phoenix Nexus Defendants" and together with the Named Plaintiffs the "Parties").

### RECITALS AND BACKGROUND

A.      Named Plaintiffs filed a Class Action Complaint, which is now pending in the United States District Court, Northern District of New York (the "Court"), designated as Case No. 5:22-cv-1324-TJM-TWD (the "Action").

B.      Defendants have defended and intend to vigorously contest each and every claim in the Action, deny all material allegations of the Action, as to which Defendants allege numerous meritorious defenses. Defendants, without admitting any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to the Action.

C.      Virginia & Ambinder, LLP and Gattuso & Ciotoli, PLLC (together, "Plaintiffs' Counsel") analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs and Settlement Class Members and are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement

is in the best interest of the Named Plaintiffs and Settlement Class Members.

      D.      The parties, by and through their respective counsel, have engaged in extensive settlement discussions, including mediation before Ruth D. Raisfeld, Esq, (the "Mediator") a well-respected mediator in the wage and hour industry. Named Plaintiffs, the Settlement Class, and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

      NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Defendants' Counsel**. "Defendants' Counsel" means Scott R. Green and Charles Lazo, Goldberg Segalla, 200 Garden City Plaza, Suite 520, Garden City, NY 11530.

1.2    **Authorized Claimant.** "Authorized Claimant" means the Named Plaintiffs, a Settlement Class Member or the authorized legal representative of such member, who timely files a completed Claim Form, and a completed W-4 Form, and who is therefore entitled to receive a Settlement Check. The Named Plaintiffs are deemed Authorized Claimants upon execution of this Agreement.

1.3    **Bar Date.** "Bar Date" means the date by which any Settlement Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form, except as otherwise provided herein. Subject to the Court's approval, the Bar Date shall be (1) sixty (60) days after the initial mailing of Notice by Class Counsel.

1.4    **Claim Form.** "Claim Form" means the form, a copy of which is attached to the Notice of Proposed Settlement, that Settlement Class Members must sign and return post-marked by the Bar Date. The Claim Form must be filed with the Settlement Claims Administrator for a Settlement Class Member to be eligible for a Settlement Check.

1.5    **Class Counsel**. "Class Counsel" or "Plaintiffs' Counsel" means James Emmet Murphy and Michele A. Moreno, Virginia & Ambinder, LLP, 40 Broad Street, 7th Floor, New York, New York 10004; Frank S. Gattuso, Gattuso & Ciotoli, PLLC, 7030 Genesee Street, Fayetteville, NY 13066.

1.6    **Class List.** "Class List" means a list in electronic format, preferably in Excel, that includes the names (first and last), last known mailing addresses, job classification, dates of employment(s) and social security numbers (for skip trace purposes only) for each Settlement Class Member, provided by the Phoenix Nexus Defendants to Class Counsel and the Settlement Claims Administrator. The Class List is to be used by Class Counsel

and the Settlement Claims Administrator to effectuate the settlement, and may not be used for any other purpose.

1.7   **Costs and Fees.** "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses, or 33 percent of the Total Settlement Fund ($733,326.00).

1.8   **Court**. "Court" means the United States District Court, Northern District of New York.

1.9   **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

1.10  **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.11  **Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, approving distribution of Costs and Fees, Settlement Claims Administrator's Costs and Fees, and dismissing the Action with prejudice.

1.12  **Final Effective Date.** Provided no appeal is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Order. If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

1.13  **Final Settlement Amount.** "Final Settlement Amount" means the sum of the Net Settlement Fund plus all Court-approved Costs and Fees, Settlement Claims Administrator's Fees, Service Awards and any and all other costs and expenses set forth in this Agreement.

1.14  **Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 6.1(B) prior to any deduction for tax purposes.

1.15  **Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after proper taxes are removed pursuant to Section 6.

1.16  **Net Settlement Fund.** "Net Settlement Fund" means the aggregate balance to be distributed to all Authorized Claimants after the deduction of Costs and Fees, Settlement Administrator Fees, and Service Awards.

1.17  **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit.

1.18 **Objection.** "Objection" means a written statement that: (1) clearly identifies the written statement as an objection, such as "I object to the settlement in the Little Caesar's wage case"; (2) contains all reasons for the objection; (3) contains the Objector's name, address, and telephone number; and (4) is signed by the Objector.

1.19 **Objector.** "Objector" means an individual Authorized Claimant who properly files an objection to this Agreement.

1.20 **Opt-In Plaintiff.** "Opt-In Plaintiff" means each individual who submitted an opt-in form prior to September 15, 2025.

1.21 **Opt-Out Statement.** "Opt-out Statement" means a written statement that: (1) unconditionally states a Settlement Class Member's intention to opt out, such as "I opt-out of the settlement in the Little Caesar's wage case"; (2) includes the Settlement Class Member's name, address, and telephone number; and (3) is signed by the Settlement Class Member.

1.22 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Settlement Class for settlement purposes; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) directing the manner and timing of providing Notice to the Settlement Class Members; and (iv) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the mailing of Notice, and the Fairness Hearing date.

1.23 **Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the bank account established in conformance with the U.S. Department of Treasury Regulation §1.468B-1 by the Settlement Claims Administrator for the Final Settlement Amount paid by Defendants. The QSF shall be funded by the Defendants to pay all Authorized Claimants, plus Costs and Fees, Settlement Administrator Fees, and Service Awards. The QSF will be controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement. Interest, if any, earned on the QSF will become part of the Final Settlement Amount.

1.24 **Released Class Claims.** "Released Class Claims" means all applicable statutory, regulatory, and/or common law claims pertaining to the payment of wages under the New York Labor Law, payment for the laundering and purchasing of uniforms under the New York Labor Law, and damages for failure to receive wage notices and pay statements under the New York Labor Law, that are based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in this action. The claims of Settlement Class Members who file a Claim Form will additionally release any and all claims under the Fair Labor Standards Act. The Claims of Settlement Class Members shall be released as of the date they sign the claim form. For all others, claims will be released as of the date this Agreement is preliminarily approved by the Court. The Released Class Claims do not include any non-related non-wage claims (whether before a court, administrative agency or otherwise).

1.25 **Released Phoenix Nexus.** "Released Phoenix Nexus" means Defendants Phoenix Nexus Limited Liability Company, Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, Bartell Rd SY LC LLC, Second St SY LC LLC, State RT SY LC LLC, North ST SY LC LLC, Seventh ST SY LC LLC, Central Ave SY LC LLC, Oswego RD SY LC LLC, and Main St SY LC LLC, along with their past, present, and future parents, subsidiaries, shareholders, insurers, officers, managers, owners, directors, employees, agents, attorneys, successors and assigns, in their individual and/or representative capacities.

1.26 **Service Award.** "Service Award" means the amount approved by the Court as a reasonable incentive award to the Named Plaintiffs for representing the interests of the Settlement Class Members.

1.27 **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount.

1.28 **Settlement Claims Administrator.** "Settlement Claims Administrator" means the qualified administrator selected by the parties to mail the Notices and administer the calculation, allocation, and distribution of the QSF or perform all administrative duties pursuant to Section 2.2.

1.29 **Settlement Claims Administrator's Fees**. "Settlement Claims Administrator's Fees" means the Settlement Claims Administrator's fees, not to exceed $30,000.00.

1.30 **Settlement Classes and Settlement Class Member(s).** "Settlement Classes" and/or "Settlement Class Member(s)" means: 1) All individuals who worked for the Phoenix Nexus Defendants as Managers in the State of New York during the period December 9, 2016 through the present; and 2) All individuals who worked for the Phoenix Nexus Defendants and were required to wear uniforms in the State of New York during the period December 9, 2016 through the present.

1.31 **Settlement Period.** "Settlement Period" means December 9, 2016 through the date this Agreement is executed.

1.32 **Total Settlement Fund.** "Total Settlement Fund" means Two Million and Two Hundred Thousand Dollars ($2,200,000.00).

1.33 **Updated Address.** "Updated Address" means a mail and/or email address that was updated via a standard skip trace or an updated mail and/or email address provided by the United States Postal Service or a Class Member.

1.34 **W-4 Form.** "W-4 Form" means the current year Employee's Withholding Allowance Certificate published by the IRS, a copy of which is attached to the Claim Form.

2.  **SETTLEMENT PROCEDURE AND PRELIMINARY APPROVAL**

2.1 **Preliminary Approval Motion.**

    A.    Within five (5) days of complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Claim Form, (3) the proposed Preliminary Approval Order, and (4) an executed version of this Agreement.[1]

    B.    In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Awards; and (5) authorize distribution and payment to the Authorized Claimants.

    C.    Plaintiffs shall submit a draft of their Preliminary Approval Motion to Defendants for Defendants' review prior to filing. Plaintiffs will file the Preliminary Approval Motion as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.

**2.2    Settlement Claims Administration.**

    A.    Within ten (10) days after preliminary approval of this Agreement by the Court, Defendants will provide Class Counsel and the Settlement Claims Administrator with the Class List.

    B.    Within thirty (30) days after preliminary approval of this Agreement by the Court, The Settlement Claims Administrator shall mail the Notice and Claim Form to Settlement Class Members via United States First Class Mail, postage prepaid.

    C.    In the event that, subsequent to the first mailing of the Notice and Claim Form and prior to the Bar Date, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with an Updated Address, the Settlement Claims Administrator shall re-mail the Notice and Claim Form to that address within two (2) days.

    D.    In the event that, subsequent to the first mailing of the Notice and Claim Form and prior to the Bar Date, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with no forwarding address, the Settlement Claims Administrator shall perform a standard skip trace in an effort to ascertain the Updated Address for the Settlement Class Member in question. If an Updated Address is ascertained, the Settlement Claims Administrator shall re-mail the Notice and Claim Form to that address within two (2) days.

---

[1] The Parties proposed Notice, Claim Form, and Preliminary Approval Order are also attached to this Agreement as Exhibits A through C respectively.

  **E.**  Additionally, the Settlement Claims Administrator shall be responsible for: (i) preparing, printing, and disseminating to Settlement Class Members the Notice and Claim Forms, including resending any Notice and Claim Form returned with a new forwarding address; (ii) copying counsel for all Parties on material correspondence; (iii) preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement whichever comes first; (iv) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections, or other written or electronic communications from Settlement Class Members that the Settlement Claims Administrator receives; (v) receiving, retaining, and reviewing the Claim Forms submitted by Settlement Class Members; (vi) keeping track of opt/out/exclusion requests and objections, including maintaining the original mailing envelopes in which same were mailed; (vii) preparing and mailing (viii) Class Counsel's Costs and Fees, (ix) Service Awards, and (x) Settlement Checks in accordance with this Agreement and any order of the Court; (xi) within five days of receipt, ascertaining current address and addressee information for each Notice and Claim Form returned as undeliverable and re-mailing of Notice and Claim Form to the current address; (xii) responding to inquiries of Settlement Class Members regarding procedures for filing objections, opt-out statements, and Claim Forms; (xiii) referring to Class Counsel all inquiries by Settlement Class Members regarding matters not within the Settlement Claims Administrator's duties specified herein; (xiv) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with Settlement Class Members or Authorized Claimants; (xvii) confirming in writing, including through a report if necessary, to Class Counsel, Defendants' Counsel, and the Court its completion of the administration of the settlement; (xviii) timely responding to communications from the Parties or their counsel; and (xix) providing all information, documents, and, if requested, calculations necessary to determine each Claimant's share or allocation of the Settlement Fund; (xx) providing a weekly email during the time period between the mailing of Notice until the Fairness Hearing that includes the total number of Claimants, opt-outs or exclusions, and objections; (xxi) throughout the period of claims administration, providing reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to Settlement Class Members, the claims administration process, distribution of the Settlement Checks, or any other aspect of the claims administration process, subject to the terms of this Agreement; and (xxii) such other tasks as the Parties mutually agree. In addition, no later than thirty (30) days after the Bar Date or at least fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator by email shall certify jointly to Class Counsel and Defendants' Counsel (a) the number of Claimants who timely filed their Claim Form, (b) a list of all Settlement Class Members who filed a timely objection, (c) a list of all Settlement Class Members who requested to opt-out of

the settlement at any time during the Opt-out Period, and (d) the aggregate payments to all Claimants, plus Class Counsels' Costs and Fees, Settlement Claims Administrator's fees and costs, and Service Awards.

**2.3   Authorized Claimants**

A.  To be deemed an Authorized Claimant, Settlement Class Members must email, fax, or postmark the fully executed Claim Form by the Bar Date. Settlement Class Members whose notice was re-mailed in accordance with Section 2.2 (C) or 2.2 (D) shall be given an additional ten (10) days after the Bar Date to submit a timely Claim Form. Settlement Class Members with documented extraordinary circumstances, such as military service or hospitalization, shall be able to submit a timely Claim Form until fifteen (15) days before the Fairness Hearing.

**2.4   Class Members who opt-out.**

A.   Settlement Class Members who elect to opt-out of the settlement as set forth in this Agreement must email, fax, or postmark a written statement by the Bar Date that: (1) unconditionally states a Settlement Class Member's intention to opt-out, such as "I opt-out of the settlement in the Little Caesar wage case"; (2) includes the Settlement Class Member's name, address, and telephone number; and (3) is signed by the Settlement Class Member.

**2.5   Objectors.**

A.   Any Settlement Class Member who does not submit an Opt-Out Statement and who wishes to object to the settlement as set forth in this Agreement, must email, fax, or postmark a written statement to the Settlement Claims Administrator within thirty (30) days from the mailing of the Notice. The written objection must (1) clearly identify the written statement as an objection, such as "I object to the settlement in the Little Caesar's wage case"; (2) contain all reasons for the objection; (3) contain the Objector's name, address, and telephone number; and (4) be signed by the Objector.

B.   After receipt from the Settlement Claims Administrator, Class Counsel shall promptly file the date-stamped originals of any and all Objections with the Court, and the Parties may file with the Court written responses to any filed Objections no later than three (3) days before the Fairness Hearing. Any reasons not included in that written objection shall not be considered by the Court.

C.   A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector. An Objector who wishes to appear at the Fairness Hearing must clearly state their intention to do so in writing on their written Objection. It is in the Court's discretion whether to allow the Objector or the Objector's counsel to speak at the Fairness Hearing.

D.   An Objector may withdraw their Objection at any time.

**3.    FAIRNESS HEARING AND FINAL JUDGMENT.**

3.1    Not later than thirty (30) days after the Bar Date, Class Counsel shall submit a Motion for Final Approval.

3.2    Class Counsel will file the Motion for Final Approval as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement. Plaintiffs agree to submit the Motion for Final Approval to Defendants for its review and comments, if any, prior to filing.

3.3    At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) approve the settlement as final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out, (b) approve Costs and Fees, (c) enter judgment in accordance with this Agreement, and (d) dismiss this action with prejudice.

**4.    TERMINATION AND ITS EFFECTS.**

4.1    Either Party may void this Agreement if the Court fails to preliminarily or finally approve this Agreement, or if the Court at any time alters any material term, including failing to approve the claims-made structure, or any other similar material terms.

4.2    Defendants may terminate this Agreement if the Final Settlement Amount should exceed One-Million and One-Hundred Thousand Dollars ($1,100,000.00) which includes all amounts to be paid in settlement of this Action, including, all attorneys' fees, claims administrator fees, service awards, and any and all other costs and expenses set forth in this Agreement.

4.3    If this settlement is not consummated for any reason, including but not limited to a ruling by the Court declining to enter a Preliminary Approval Order or Final Order, the Parties shall first endeavor to resolve the matter jointly and in good faith with the goal of effectuating settlement. This may include seeking reconsideration of the Court's ruling, renegotiating this Agreement, or taking any other actions to address the reason settlement was not consummated. To the extent such efforts fail, the Parties may then continue to litigate the Action as though this Agreement had never been executed.

4.4    **Effect of Termination or Failure to Obtain Preliminary or Final Approval.** In the event that this Agreement is not approved in its entirety by the Court, excluding modifications that the Parties determine in their reasonable and good faith judgment not to be material modifications, or in the event that the settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, the Parties shall proceed as follows:

   A.    This Agreement shall be deemed null and void and its terms and provisions shall have no further force or effect.

   B.    In the event of termination by Defendants, Defendants shall pay the reasonable expenses of the Settlement Claims Administrator incurred to the date of its

termination

C.     In the event of this Agreement being terminated by the Court, or by mutual agreement by the Parties, Defendants shall have no obligation to make any payments to any party, Class Member, Claimant, or Class Counsel. However, the Parties shall be jointly responsible for paying the costs and fees associated with a mediator (if any is engaged) subsequent to the signing of this Agreement and shall be jointly responsible for the reasonable costs, fees and expenses of the Settlement Claims Administrator. If the Parties should fail to agree on the selection of a mediator, the Parties shall engage the Mediator for resolution of any further dispute(s).

D.     Neither this Agreement, nor any other related papers or orders, including the Term Sheet, may be cited to, used, or deemed admissible in any judicial administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

E.     Litigation shall proceed without prejudice as if this Agreement had not been executed unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

F.     None of the Parties shall be deemed to have waived any claims, objections, defenses, or arguments.

G.     Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any Costs and Fees to be paid to Class Counsel, or reducing the amount of any Service Payment, shall constitute grounds for cancellation or termination of the Agreement or grounds for limiting any other provision of the Judgment. Class Counsel retains and reserves all rights to appeal or seek reconsideration of any order of the Court reducing the amount of Costs and Fees to be paid to Class Counsel and/or any order of the Court reducing the amount of any Service Payment. Defendants shall not oppose the appeal or motion for reconsideration so long as Class Counsel seeks an amount that does not exceed the amounts contemplated in this Agreement.

H.     If the Agreement is terminated after Class Notice is sent, the Class Counsel shall provide notice to Class Members informing them that the settlement was voided, and that as a result, no payments will be made and that Class Members, whether they submitted a Claim Form or not, retain all rights and privileges under the law, and that litigation in this action will continue. The notice may contain any additional information jointly agreed to by Class Counsel and Defendants' counsel, including but not limited to, an explanation of why the Agreement was terminated. Such notice shall be mailed and emailed by Class Counsel via United States First Class Mail, postage prepaid, to the addresses contained on the Class List and/or to

any Updated Address. Class Members whose settlement Notice was returned and for whom there is no Updated Address need not be sent the termination notice by mail.

**5.    DISCOVERY**

5.1    Nothing in this agreement is intended to limit the Parties' rights to any discovery, including oral depositions, in the event litigation in this action resumes for any reason set forth in this Agreement.

**6.    CONSIDERATION AND OTHER PAYMENTS**

6.1    **Settlement Checks to Authorized Claimants.**

   A.    Within five (5) days of complete execution of this Agreement, Defendants shall provide Class Counsel with the total number of workweeks per Settlement Class Member.

   B.    Each Authorized Claimant shall be entitled to receive an individually calculated payment in accordance with the following formula:

   1. For each category of damages, an Authorized Class Claimant's Individual Gross Amount shall be based on his or her percentage of weeks worked as against all weeks worked by the Class between December 9, 2016 through the date of preliminary approval, based upon the initial hiring and termination dates for each Settlement Class Member which Defendants will provide to Class Counsel and the Settlement Claims Administrator.

   2. For each category of damages, each Settlement Class Member's percentage is calculated by (1) taking the individual Settlement Class Member's total weeks worked during the relevant period as the numerator, and (2) dividing it by the sum of all weeks worked by all Class Members as the denominator. The denominator for each Settlement Class Member will be the same number. As a result of this calculation, the total of all Settlement Class Members' numerators must equal the denominator. Thus, the Settlement Class Member's adjusted individual weeks worked divided by the sum of all weeks worked for all Settlement Class Members, equals his/her individual percentage allocation.

   3. The Net Settlement Fund shall be multiplied by each Authorized Claimant's percentage allocation as calculated in Section 6.1(B)(2). This represents the individual amount allocated to each Authorized Claimant – or Individual Gross Amount.

   4. The settlement recognizes that Class Members that worked as Managers and Class Members that worked as Non-Managers are entitled to different categories of damages. Specifically, Managers will receive a portion of the

    settlement attributable to unpaid overtime (14% of the Net Settlement Fund), and failure to provide wage notice and pay statement damages (10% of the Net Settlement Fund). Non-Managers will receive a portion of the settlement attributable to failure to provide wage notice damages (50% of the Net Settlement Fund). Both Managers and Non-Managers will receive a portion of the settlement attributable to unpaid uniform maintenance wages (26% of the Net Settlement Fund).

  C. Defendants' records shall be used to determine the number of eligible employment weeks for each Authorized Claimant. In the event an Authorized Claimant disputes his or her employment data, the Parties shall cooperate and provide any evidence to support their respective positions to resolve the dispute. If the Parties are unable to resolve the dispute, the Parties will submit the dispute to Ruth D. Raisfeld, Esq. whose decision will be binding.

  D. If the aggregate, preliminary Individual Gross Amount for all Authorized Claimants, plus the Settlement Claims Administrator's Fees under Section 1.29, the maximum permitted attorneys' Costs and Fees under Section 6.3, and the maximum permitted Service Awards to Named Plaintiffs under Section 6.2, totals anywhere between one-million one-hundred thousand dollars and one cent ($1,100,000.01) and one-million three-hundred thousand dollars ($1,300,000.00), the Authorized Claimants' Individual Gross Amounts and the maximum Costs and Fees that Class Counsel may request under Section 6.3 shall be reduced proportionately to ensure that the Final Settlement Amount shall not exceed one-million one-hundred thousand dollars ($1,100,000.00).

  E. Within thirty (30) days after the Court grants final approval of the Settlement Agreement and Release, Defendants shall fund the QSF with the Final Settlement Amount.

**6.2 Service Award.**

  A. Named Plaintiff Gordon Horner shall receive a Service Award in the amount of $15,000.00 from the QSF.

  B. Named Plaintiff Ann Marie Hudson shall receive a Service Award in the amount of $15,000.00 from the QSF.

**6.3 Settlement Amounts Payable as Costs and Fees.**

  A. Defendants shall guarantee payment of professional fees to Class Counsel in the amount of $733,326.00. At the Fairness Hearing and Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' Costs and Fees of

        in the amount of $733,326.00, to be paid from the QSF. Defendants shall not oppose such application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

    **B.**    The substance of Class Counsel's application for attorneys' Costs and Fees is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the action. The outcome of any proceeding related to Class Counsel's application for Costs and Fees shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Class Counsel shall have the right to appeal the Court's determination with respect to their application for Costs and Fees, which shall not be opposed by Defendants.

**6.4**    **Tax Characterization.**

    **A.**    For tax purposes, the payments to Authorized Claimants shall be allocated as follows: wages (50% of each settlement payment), liquidated damages (50% of each settlement payment).

    **B.**    Defendants shall report wage payments to the respective payees and to the appropriate taxing authorities on an IRS Form W-2. This portion of the settlement payment shall be subject to applicable employment taxes and withholding taxes.

    **C.**    Defendants shall report payments for liquidated damages without tax withholdings to the respective payees and to the appropriate taxing authorities on an IRS Form 1099.

    **D.**    Defendants shall report payments of Service Awards without tax withholdings to the respective payees and to the appropriate taxing authorities on an IRS Form 1099.

    **E.**    Defendants shall report payments of Costs and Fees without tax withholdings to Class Counsel and to the appropriate taxing authorities on an IRS Form 1099.

    **F.**    Defendants shall also calculate all employer payroll taxes with respect to the wage payments made pursuant to this Agreement and file all necessary reports as required by law.

    **G.**    In the event that it is subsequently determined by any taxing authority that any payee owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that payee, and that neither the Parties, nor Parties' Counsel, is responsible for the payment of such taxes, including any interest and penalties.

**6.5**    **Release of Claims.** By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each Settlement Class Member who does not submit a timely and valid Opt-Out Statement pursuant to this Agreement, fully, finally and forever releases and dismisses with prejudice the Released Class Claims,

regardless of whether such individual files a Claim Form.

**7. MISCELLANEOUS PROVISIONS**

7.1 **Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

7.2 **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

7.3 **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Settlement Class Members, their representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiff and all Settlement Class Members in this Action, this agreement is binding.

7.4 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

7.5 **Captions**. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

7.6 **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

7.7 **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

7.8 **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be

deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**7.9**  **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**7.10**  **Facsimile and Email Signatures**.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**7.11**  **Construction**.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**7.12**  **Consultation and Authority.** Class Counsel warrants and represents that they have consulted with Named Plaintiff and have full authority to enter into this Agreement on behalf of the Named Plaintiff and the Settlement Class.

**WE AGREE TO THESE TERMS,**

DATED: Jan 6, 2026, 2026

_/s/ Gordon Horner_
Gordon Horner (Jan 6, 2026 15:20:43 EST)
Gordon Horner

DATED: Jan 6, 2026, 2026

_/s/ Ann Marie Hudson_
Ann Marie Hudson (Jan 6, 2026 15:13:16 EST)
Ann Marie Hudson

DATED: 01/06/2026, 2026

_Nandish Patel_
Phoenix Nexus Limited Liability Company,
By: Nandish Patel
Title: Member

DATED: <u>01/06/2026</u>, 2026

*Gerald Francese*

_____
Main St LC, LLC,
Salina St SY LC LLC,
Onondaga Blvd SY LC LLC,
Manliu St SY LC LLC,
Wolf St SY LC, LLC,
Bartell Rd SY LC LLC,
Second St SY LC LLC,
State RT SY LC LLC,
North St SY LC LLC,
Seventh ST SY LC LLC,
Central Ave SY LC LLC,
Oswego Rd SY LC LLC,
Main St SY LC LLC,

By: <u>Gerald Francese</u>
Title: <u>Power of Attorney for the Above Entities</u>