UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GORDON HORNER and ANN MARIE HUDSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Little Caesar Enterprises, Inc., Phoenix Nexus Limited Liability Company, Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, and ABC CORPORATIONS 1-100. <br><br> Defendants. | No. 5:22-cv-1324-AJB-TWD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT**

VIRGINIA & AMBINDER, LLP
James E. Murphy, Esq.
Michele A. Moreno, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel:    (212) 943-9080
Fax: (212) 943-9082
jmurphy@vandallp.com
mmoreno@vandallp.com

-    and –

GATTUSO & CIOTOLI, PLLC
Frank S. Gattuso, Esq.
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
(315) 314-8000
fgattuso@gclawoffice.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ...............................................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................1

     A.     Plaintiffs' Claims ......................................................................................1

     B.     Collective and Class Certification .............................................................3

     C.     Settlement Negotiations ............................................................................3

II.     SUMMARY OF SETTLEMENT TERMS.........................................................................4

     A.     The Settlement Fund .................................................................................4

     B.     Authorized Claimants ...............................................................................4

     C.     Releases.....................................................................................................5

     D.     Allocation Formula ...................................................................................5

     E.     Attorneys' Fees, Litigation Costs, and Service Awards ...........................6

III.     CLASS CERTIFICATION SHOULD BE GRANTED FOR SETTLEMENT PURPOSES
.........................................................................................................................7

     A.     Numerosity................................................................................................8

     B.     Commonality and Predominance ..............................................................9

     C.     Typicality..................................................................................................9

     D.     Fair and Adequate Representation .........................................................10

     E.     Requirements of Rule 23(b) Have Been Satisfied .................................10

IV.     CLASS ACTION SETTLEMENT PROCEDURE .........................................................11

V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................13

     A.     The Settlement is Fair, Reasonable, and Adequate................................15

1. Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) .................................................................................................................................15

2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .............................16

3. Discovery Has Advacned Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ...................................................................................16

4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4, 5, and 6) ...............................................................................................................................17

5. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ................18

6. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) .................................................19

VI.     THE NOTICE PLAN, DISTRIBUTION PROCESS, AND RELEASE ARE APPROPRIATE..............................................................................................................21

CONCLUSION..............................................................................................................23

TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................11

*Baudin v. Resource Mktg. Corp., LLC*,
2020 U.S. Dist. LEXIS 146280 (N.D.N.Y. 2020) ....................................................19

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..............................................................................19

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ..................................19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ......................................................................................15

*Clark v. Ecolab Inc.*,
2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ..........................................................13

*Cortigiano v. Oceanview Manor Home for Adults*,
227 F.R.D. 194 (E.D.N.Y. 2005) ................................................................................8

*Cruz v. Sal-Mark Rest. Corp.*,
2019 U.S. Dist. LEXIS 13529 (N.D.N.Y. 2019) ................................................14, 16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..................................................................................16, 19

*D'Angelo v. Hunter Bus. Sch., Inc.*,
2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023) ........................................19

*deMunecas v. Bold Food*,
No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) ..........................14

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ................................17

*Elliot v. Leatherstocking Corp.*,
No. 3:10-CV-934 (MAD/DEP), 2012 U.S. Dist. LEXIS 171443 (N.D.N.Y Dec. 4, 2012) .......8, 9

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) .....................................................................14,19, 21

*Goldberger v. Integrated Res., Inc.*,

209 F.3d 43 (2d Cir. 2000) ..............................................................................15

*Gortat v. Capala Bros., Inc.,*
257 F.R.D. 353 (E.D.N.Y. 2009) ......................................................................8

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.,*
2014 U.S. Dist. LEXIS 115710 (N.D.N.Y. Aug. 20, 2014) ..............................14

*Hernandez v. Immortal Rise, Inc.,*
2012 WL 5862749  (E.D.N.Y 2013) ................................................................14

*In re Agent Orange Prod. Liab. Litig.,*
597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom.* 818 F.2d 145 (2d Cir. 1987) ...............14

*In re Am. International Group Secs. Litig.,*
689 F.3d 229 (2d Cir. 2013)..............................................................................21

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................15, 16, 19

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001)..............................................................................16

*In re Ira Haupt & Co.,*
 304 F. Supp. 917 (S.D.N.Y. 1969) ..................................................................17

*In re Michael Milken & Assocs. Sec. Litig.,*
150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................22

*In re Painewebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................17

*In re Traffic Exec. Ass'n E. R.Rs.,*
627 F.2d 631 (2d Cir. 1980) ............................................................................14

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004)........................................................................13, 16

*Joel A. v. Giuliani,*
218 F.3d 132 (2d Cir. 2000) ........................................................................8, 21

*Johnson v. Brennan,*
No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)............................22

*Kirby v. FIC Rest., Inc.,*
2020 U.S. Dist. LEXIS 114356 (N.D.N.Y 2020) .................................................. *passim*

*Marisol A. ex rel. Forbes v. Giuliani,*
126 F.3d 372 (2d Cir. 1997) ...................................................................................8

*Martens v. Smith Barney, Inc.,*
181 F.R.D. 243 (S.D.N.Y. 1998) ...........................................................................16

*Massey v. On-Site Manager, Inc.,*
285 F.R.D. 239 (E.D.N.Y. 2012) ............................................................................8

*Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072 (2d Cir. 1995) .................................................................................13

*McMahon v. Olivier Cheng Catering and Events, LLC,*
No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. 2010) ........................9

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) .................................................................................19

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ...............................................................................19

*Palacio v. E*TRADE Fin. Corp.,*
No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ..........................14

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ............................................................................................11

*Reyes v. Altamarea Grp., LLC,*
No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) ............................14

*Rodriguez v. Cpi Aerostructures,*
2021 U.S. Dist. LEXIS 218246 (E.D.N.Y. 2021) ............................................18, 21

*Sewell v. Bovis Lend Lease, Inc., et al.,*
No. 09-CV-6548, 2013 U.S. Dist. LEXIS 47526 (S.D.N.Y. Mar. 29, 2013) ............6

*Velez v. Majik Cleaning Serv., Inc.,*
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..........................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005) ..................................................................................13

*Ying v. All-Ways Forwarding of N.Y. Inc.,*
2025 U.S. Dist. LEXIS 61448 (E.D.N.Y. Mar. 31, 2025) .................................17, 19

STATUTES AND REGULATIONS

12 New York Codes, Rules, and Regulations § 146-1.7 ................................................3

12 New York Codes, Rules, and Regulations § 146-1.8 ...............................................3

Fed. R. Civ. P. 23(e) ...................................................................................................12

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................22

New York Labor Law § 195(1) .....................................................................................3

New York Labor Law § 195(3) .....................................................................................2

OTHER AUTHORITIES

7 A C. Wright & A. Miller, Federal Practice and Procedure § 1785 ............................8

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.22 .....................12

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 .........................13, 14, 15

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.26 .....................15

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 .....................13

*Manual for Complex Litigation* (Third) § 30.41 .........................................................14

## INTRODUCTION

Subject to this Court's approval, Named Plaintiffs Gordon Horner and Ann Marie Hudson, individually and on behalf of all other persons similarly situated (collectively referred to as "Plaintiffs") and Defendants Phoenix Nexus Limited Liability Company, Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, Bartell Rd SY LC LLC, Second St SY LC LLC, State RT SY LC LLC, North ST SY LC LLC, Seventh ST SY LC LLC, Central Ave SY LC LLC, Oswego RD SY LC LLC, and Main St SY LC LLC ("Defendants" or "Phoenix Nexus") (Plaintiffs and Defendants, collectively, the "Parties") have settled this wage and hour class and collective action. The proposed settlement satisfies all of the criteria for preliminary approval.  Plaintiffs respectfully request that the Court (1) certify the Settlement Classes (as defined herein) for settlement purposes; (2) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement"), and (3) approve the Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Proposed Notice") and Proof of Claim Form and Release ("Proposed Claim Form" or "Claim Form"); and (5) implement the schedule proposed by the parties in the Proposed Order for effectuating the other terms of the Settlement Agreement. Defendants do not oppose this motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiffs' Claims

Plaintiffs commenced this action on December 9, 2022 alleging that Defendants maintained a policy and practice of misclassifying its managers as "exempt" employees and not paying them overtime compensation in violation of the FLSA and NYLL, failing to compensate all employees for the purchasing and laundering of uniforms in violation of the NYLL, and failing

to provide accurate wage statements and notices in violation of the NYLL. [*See generally*, Dkt. No. 1, Plaintiffs' Complaint].

Defendant Phoenix Nexus Limited Liability Company is a franchisee of several Little Caesars pizza restaurants, including in New York state. Defendant Phoenix Nexus Limited Liability Company owned, operated, managed, and otherwise controlled the business of each of its Little Caesars franchises in New York through the use of its subsidiary LLCs – Defendants Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, Bartell Rd SY LC LLC, Second St SY LC LLC, State RT SY LC LLC, North ST SY LC LLC, Seventh ST SY LC LLC, Central Ave SY LC LLC, Oswego RD SY LC LLC, and Main St SY LC LLC.[1].

Plaintiffs alleged that "Managers" were uniformly misclassified by Defendants as "exempt" from overtime payments. When Managers worked 50 hours or more in a week, they were paid a flat rate for 50 hours of work, regardless of how many hours they actually worked. However, when Managers worked less than 50 hours in a week, they were paid an hourly rate for all hours worked, and were not paid any overtime, in violation of the FLSA. Plaintiffs also alleged that Managers did not receive accurate pay statements from Defendants reflecting the actual hours worked, among other required information, in violation of NYLL § 195(3).

Plaintiffs further alleged that Defendants required all of its store employees, regardless of job title, to wear uniforms as a term and condition of their employment, but that Defendants did

---

[1] Defendants Phoenix Nexus Limited Liability Company, Main St LC LLC, Salina St SY LC LLC, Onondaga Blvd SY LC LLC, Manlius St SY LC LLC, Wolf St SY LC LLC, Bartell Rd SY LC LLC, Second St SY LC LLC, State RT SY LC LLC, North ST SY LC LLC, Seventh ST SY LC LLC, Central Ave SY LC LLC, Oswego RD SY LC LLC, Main St SY LC LLC, and ABC CORPORATIONS 1-100 are collectively referred to as the "Phoenix Nexus Defendants" or "PN Defendants."

not launder the required uniforms or pay an additional compensation per week as required by the NYLL and 12 NYCRR § 146-1.7. Plaintiffs alleged that the uniform Defendants required its store employees to wear was not furnished to them in a sufficient manner consistent with average number of days per week that they worked. Plaintiffs further alleged that Defendants only provided Plaintiffs with one shirt and one hat at the commencement of their employment, and required employees to purchase any additional required uniform items, such as extra shirts or hats without reimbursing them in violation of the NYLL and 12 NYCRR § 146-1.8.

Finally, Plaintiffs alleged that Defendants failed to provide all employees (both Managers and Non-Managers) with accurate wage notices, or any notices at all, in violation of NYLL § 195(1).

### B.  <u>Collective and Class Certification</u>

On December 18, 2023, Plaintiffs moved for conditional certification of the collective for the one FLSA claim – unpaid overtime for Managers. The motion was granted on May 15, 2025, conditionally certifying the following collective: All current and former Managers employed by Defendants in the state of New York and classified as exempt at any time from December 18, 2020 through the date of trial. [Dkt. No. 138, May 15, 2025 Decision and Order.]

Plaintiffs have not yet moved for Rule 23 class certification of Plaintiffs' NYLL claims. However, Plaintiffs now seek certification of two NYLL subclasses for settlement purposes only:

A) All current and former Managers misclassified as exempt from overtime who have worked for Defendants in the State of New York from December 9, 2016 through the date of trial (the "NY Manager Class").

B) All current and former employees required to wear a uniform, who have worked for Defendants in the State of New York from December 9, 2016 through the date of trial (the "NY Uniform Class").

### C.  <u>Settlement Negotiations</u>

The parties attended private mediation with mediator Michael J. Sciotti on January 23, 2024 and September 7, 2024. [Declaration of Michele A. Moreno ("Moreno Decl."), ¶4.] The parties attended private mediation again on June 12, 2025 with mediator Ruth D. Raisfeld. *Id*. Both mediators Sciotti and Raisfeld are well-respected mediators in the wage and hour domain. *Id*. After several mediations, the parties continued to discuss settlement negotiations and agreed to the terms of a Settlement Agreement on or about August 20, 2025. [*Id*. ¶ 5; *see* Exhibit A to the Declaration of Moreno Decl., Settlement Agreement and Release.][2]

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

The Settlement Agreement contemplates a claims-made settlement with a Settlement Fund of $2,200,00.00 (the "Fund"), subject to Defendant's unconditional right to terminate the Agreement if, *inter alia*, it is required to pay more than $1,100,000.00.  [Ex. A §§ 1.35, 2.12.] The Fund covers awards to Authorized Claimants,[3] fees for the settlement claims administrator, attorneys' fees and costs in the amount of $733,333.00 (33% of the Fund), and service awards to Named Plaintiffs in the amount of $15,000.00 each. [Ex. A, ¶¶ 1.7, 6.3].

### B.  Authorized Claimants

Authorized claimants include Named Plaintiffs and all Settlement Class Members who timely file a completed Claim Form and W-4 form, and who are therefore entitled to receive a Settlement Check. [Ex. A, ¶ 1.2]. Settlement Class Members are defined as, "1) All individuals who worked for the Phoenix Nexus Defendants as Managers in the State of New York during the period December 9, 2016 through the present; and 2) All individuals who worked for the Phoenix

---

[2] All Exhibits referenced herein are annexed to the Moreno Decl. unless otherwise noted.

[3] For the purposes of this Memorandum of Law, all terms not otherwise defined herein shall have the same meanings set forth in the Settlement Agreement.

Nexus Defendants and were required to wear uniforms in the State of New York during the period December 9, 2016 through the present." [Ex. A, ¶ 1.30].

### C.  **Releases**

Each Settlement Class Member who does not timely opt-out of the settlement shall release Defendants from all applicable statutory, regulatory, and/or common law claims pertaining to the payment of wages under the New York Labor Law, payment for the laundering and purchasing of uniforms under the New York Labor Law, and damages for failure to receive wage notices and pay statements under the New York Labor Law, that are based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in this action. [Ex. A, ¶ 1.24]

The claims of Settlement Class Members who file a Claim Form will additionally release any and all claims under the Fair Labor Standards Act. [Ex. A, ¶ 1.24]

The Released Class Claims do not include any non-related non-wage claims (whether before a court, administrative agency or otherwise). [Ex. A, ¶ 1.24]

### D.  **Allocation Formula**

Each Authorized Claimant who timely files a Claim Form and W-4 Form, and whose Claim and W-4 Forms are properly completed and submitted, will receive a Settlement Check based on the following formula:

1. For each category of damages, an Authorized Class Claimant's Individual Gross Amount shall be based on his or her percentage of weeks worked as against all weeks worked by the Class between December 9 2016 through the date of preliminary approval, based upon the initial hiring and termination dates for each Settlement Class Member which Defendants will provide to Class Counsel and the Settlement Claims Administrator.

2. For each category of damages, each Settlement Class Member's percentage is calculated by (1) taking the individual Settlement Class Member's total weeks worked during the relevant period as the numerator, and (2) dividing it by the sum of all weeks worked by all Class Members as the denominator. The denominator for each Settlement Class Member will be the same

number. As a result of this calculation, the total of all Settlement Class Members' numerators must equal the denominator. Thus, the Settlement Class Member's adjusted individual weeks worked divided by the sum of all weeks worked for all Settlement Class Members, equals his/her individual percentage allocation.

3. The Net Settlement Fund shall be multiplied by each Authorized Claimant's percentage allocation. This represents the individual amount allocated to each Authorized Claimant – or Individual Gross Amount.

The settlement allocation formula recognizes that Settlement Class Members that worked as Managers and Settlement Class Members that worked as Non-Managers are entitled to different categories of damages. Specifically, Managers will receive a portion of the settlement attributable to unpaid overtime (14% of the Net Settlement Fund), and failure to provide wage notice and pay statement damages (10% of the Net Settlement Fund). Non-Managers will receive a portion of the settlement attributable to failure to provide wage notice damages (50% of the Net Settlement Fund). Both Managers and Non-Managers will receive a portion of the settlement attributable to unpaid uniform maintenance wages (26% of the Net Settlement Fund). Defendants' records shall be used to determine the number of eligible employment weeks for each Authorized Claimant. [Ex. A, ¶ 6.1(C).]

### E.  **Attorneys' Fees, Litigation Costs, and Service Awards**

At the Fairness Hearing, Plaintiffs will petition the Court for an award of 33% of the Fund ($733,333.00), which Defendants will not oppose. [Ex. A, ¶ 6.3.] Plaintiffs will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. Plaintiffs will also apply for a service award in the amount of $15,000 for Named Plaintiff Horner and $15,000 for Named Plaintiff Hudson, in recognition of the services they rendered on behalf of the class ("Service Awards"). [Ex. A, ¶6.2.][4]

---

[4] Service award applications are common in the Second Circuit, and typically granted.  *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc., et al.*, No. 09-CV-6548, 2013 U.S. Dist. LEXIS 47526, at *14-15 (S.D.N.Y. Mar. 29, 2013) (granting

The Court need not rule on the proposed attorneys' fees award or Service Awards at this time. Plaintiffs will ask the Court to approve them simultaneously with Plaintiffs' anticipated Motion for Final Approval of the Settlement.

## III.    CLASS CERTIFICATION SHOULD BE GRANTED FOR SETTLEMENT PURPOSES

Rule 23 provides that one or more members of a class may sue as representative parties on behalf of a class if:

1. the class is so numerous that joinder of all members is impracticable ["numerosity"], see Fed. R. Civ. Pro. 23(a)(1);

2. there are questions of law or fact common to the class ["commonality"], see Fed. R. Civ. Pro. 23(a)(2);

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], see Fed. R. Civ. Pro. 23(a)(3);

4. the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"], see Fed. R. Civ. Pro. 23(a)(4); and

5. the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ["superiority"]. The matters pertinent to the findings include:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum;
> (D) the difficulties likely to be encountered in the management of a class action see Fed. R. Civ. Pro. 23(b)(3).

---

service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement, and listing supporting cases).

It is well established that the criteria set forth in Rule 23 are to be liberally construed. *See Massey v. On-Site Manager, Inc.,* 285 F.R.D. 239, 244 (E.D.N.Y. 2012) ("The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction and has shown a general preference for granting rather than denying class certification.") (*citing Gortat v. Capala Bros., Inc.,* 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (*quoting Marisol A. ex rel. Forbes v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997), *and Cortigiano v. Oceanview Manor Home for Adults,* 227 F.R.D. 194, 203 (E.D.N.Y. 2005))); *see also* 7 A C. Wright & A. Miller, Federal Practice and Procedure § 1785.

In this case, Plaintiffs seek certification of two subclasses for settlement purposes:

A) All current and former Managers misclassified as exempt from overtime who have worked for Defendants in the State of New York from December 9, 2016 through the date of trial (the "NY Manager Class").

B) All current and former employees required to wear a uniform, who have worked for Defendants in the State of New York from December 9, 2016 through the date of trial (the "NY Uniform Class").

As set forth below, Plaintiffs satisfy the requirements of Rule 23. For settlement purposes, a class action is the most efficient, most effective and least costly method of resolving this dispute.

## A.    Numerosity

For settlement purposes, Defendants produced time and payroll records for approximately 381 putative class members and represented that there were approximately 881 total putative class members. [Moreno Decl. ¶ 6.]  It is clear that the class is so numerous that joinder of all members is impracticable. *See* e.g. *Kirby v. FIC Rests., Inc.*, 2020 U.S. Dist. LEXIS 93037, *6-7 (N.D.N.Y. May 28, 2020) (finding numerosity for settlement purposes because, '[n]umerosity is presumed at a level of 40 members...'") (quoting *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-934 (MAD/DEP), 2012 U.S. Dist. LEXIS 171443, *5 (N.D.N.Y Dec. 4, 2012).

B.    **Commonality and Predominance**

It is the Plaintiffs' position that there are common questions of law and/or fact that predominate over questions affecting only individual members.  These common questions include but are not limited to (1) whether Managers were improperly classified as "exempt" employees under the NYLL; (2) whether Defendants failed to pay Managers all overtime compensation due to them for all hours worked in excess of 40 hours per week; (3) whether Defendants failed to properly compensate employees for the laundering and purchasing of uniforms; and (4) whether Named Plaintiffs and putative class members are entitled to liquidated damages. Each of these core issues involves the existence of a common nucleus of operative facts based on Defendants' common policies and procedures. Commonality and predominance are thus satisfied. *See e.g. Kirby*, 2020 U.S. Dist. LEXIS 93037 at *6-7 (finding commonality met for settlement purposes where "class members raise common issues of fact relating to Defendant's failure to pay minimum wage, overtime, and 'spread of hours' compensation, unlawfully retaining or distributing employees' tips, and failing to provide Plaintiffs with proper wage notices and wage statements.")

C.    **Typicality**

The Named Plaintiffs' claims are typical of the claims of the members of the putative class. The Named Plaintiffs, like every other member of the class, allege they were entitled to receive overtime compensation for all hours worked over 40 in a week, uniform maintenance pay, and damages for Defendants' failure to provide accurate wage statements and notices. *See e.g. Kirby*, 2020 U.S. Dist. LEXIS 93037 at *7 (finding typicality met for settlement purposes "'because all class members' claims are based on the same factual and legal theories[; and, further,] all class members suffered the same injury.'") (quoting *Elliot*, 2012 U.S. Dist. LEXIS 171443, at *6 (citing *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 U.S.

Dist. LEXIS 18913, *5 (S.D.N.Y. 2010) (the class members sustained the same injury — defendants' failure to pay proper overtime and mandatory gratuities paid by customers)).

### D.    <u>Fair and Adequate Representation</u>

Class Counsel are experienced employment litigators who have successfully represented classes in hundreds of wage and hour cases representing tens of thousands of workers and will fairly and adequately represent and safeguard the rights and interests of the class. [Moreno Decl. ¶ 11-12.] The interests of the class will also be fairly and adequately protected by the Named Plaintiffs. The Named Plaintiffs have a real and direct pecuniary interest in pursuing this action having spent time working for Defendants and who were allegedly underpaid for their work. *See e.g. Kirby*, 2020 U.S. Dist. LEXIS 93037 at *7 (finding Class Counsel (Virginia & Ambinder, LLP and Gattuso & Ciotoli, PLLC) to be adequate counsel because they are "experienced in complex wage and hour collective and class-action litigation; and, in addition, "there is no evidence that plaintiffs' and the class members' interests are at odds.'") (internal citations omitted).

Additionally, to the best of Class Counsel's knowledge, there is no competing litigation already commenced by any member of the class. [Moreno Decl. ¶ 12.]

### E.    <u>Requirements of Rule 23(b) Have Been Satisfied</u>

Although only one is required, both parts of Rule 23(b)(3) are met here. "When evaluating litigation classes, [the Second Circuit has] held that the predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Am. International Group Secs. Litig.,* 689 F.3d 229, 240 (2d Cir. 2013) (internal punctuation omitted). Here, questions of law or fact common to the class predominate over questions affecting individual members for the same reasons set forth under commonality and typicality.

When considering whether a class action is superior to other available methods of adjudication, Rule 23(b)(3) requires Courts to consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). Courts also look to such factors as whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . ." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Here, the class action device is superior to any other method for the fair and efficient adjudication of the issues before this Court. The alternative would be to require almost 900 individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's time and resources. Certification of the class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards upon Defendants. There are no difficulties likely to be encountered in the management of this action as a class action. Further, given the expense of litigation and the relatively small size of numerous individual claims, many members of the class simply could not afford to pursue redress absent class treatment. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Accordingly, a class action is the superior and only practical method of adjudication of obtaining relief for the members of the class.

## IV.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiffs' instant motion requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving the proposed Notice which has been approved by all parties, and authorizing Plaintiffs to publish the Notice to class members.

Should the Court preliminarily approve class settlement, Plaintiffs' Counsel intend to file a Motion for Final Approval of the Settlement in accordance with the Court-approved schedule so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release; (3) dismiss this action with prejudice; (4) award attorneys' fees and costs, and Service Awards; and (5) authorize distribution and payment to the Authorized Claimants.

Plaintiffs respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

i.    Within ten (10) days after preliminary approval of the Settlement Agreement by the Court, Defendants will provide Class Counsel and the Settlement Claims Administrator with the Class List. [Ex. A, ¶ 2.2(A)].

ii.    Within thirty (30) days after preliminary approval of the Settlement Agreement by the Court, the Settlement Claims Administrator shall mail the Court-approved Notice and Claim Form to Class Members via United States First Class Mail, postage prepaid. [Ex. A, ¶ 2.2(B)].

iii.    Class Members will have sixty (60) days after the Notice is mailed to file a claim or to opt out of the settlement ("Bar Date"). [Ex. A, ¶¶ 1.3; 2.3(A)].

iv.    No later than thirty (30) days after the Bar Date, Class Counsel will file an unopposed Motion for Final Approval of the Settlement. [Ex. A, ¶ 3.1].

v.       A final Fairness Hearing will be held on a date to be set by the Court in the Preliminary Approval Order. [Ex. A, ¶ 1.22]. This date is typically approximately ten (10) days after Class Counsel submits a Motion for Judgment and Final Approval or as soon as practical thereafter.

vi.      At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) approve the settlement as final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out, (b) approve Costs and Fees, (c) enter judgment in accordance with this Agreement, and (d) dismiss this action with prejudice. [Ex. A, ¶ 3.3].

## V.       PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing *Newberg* § 11.25). To grant

preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41).[5] *See Kirby v. FIC Rest., Inc.*, 2020 U.S. Dist. LEXIS 114356, at *6 (N.D.N.Y 2020) ("Granting preliminary approval 'is not tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'") citing *In re Traffic Exec. Ass'n E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "'If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Cruz v. Sal-Mark Rest. Corp.*, 2019 U.S. Dist. LEXIS 13529, at *10-11 (N.D.N.Y. 2019) citing *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, 2014 U.S. Dist. LEXIS 115710, 2014 WL 4352060, at *4 (N.D.N.Y. Aug. 20, 2014). Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to join in the settlement, object, or opt out of the settlement. After

---

[5] Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 2012 WL 5862749, at *1 (E.D.N.Y 2013) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) (same); *deMunecas v. Bold Food*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) (same).

the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

A. **The Settlement is Fair, Reasonable, and Adequate**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1. **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian &*

*German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Further litigation, depositions, discovery for opt-in Plaintiffs, an anticipated motion for class certification, dissemination of class notice if granted, and motions for summary judgment, would cause additional expense and delay. If the Court denied the motions for summary judgment, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement and its details have not yet been issued to the class. The Court should more fully analyze this factor after notice issues and Settlement Class Members are given the opportunity to opt out or object. At this early stage in the process, Named Plaintiffs Horner and Hudson have expressed approval of the settlement.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Relevant to an assessment of this factor is "'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Cruz*, 2019 U.S. Dist. LEXIS 13529, at *13 (N.D.N.Y. 2019) citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted).

16

Here, the Parties have completed sufficient discovery to recommend settlement. Class Counsel investigated Defendants' business operations, including communicating with the Named Plaintiffs and other class and collective members to ascertain the nature of their respective claims. [Moreno Decl. ¶ 6.] Defendants produced documentation of their corporate policies with respect to Plaintiffs' claims, which Class Counsel reviewed. Defendants produced payroll and time records for the Named Plaintiffs and approximately 381 different employees, for settlement purposes, which Class Counsel reviewed and used as the underlying basis for damage calculations. *Id*. Class Counsel also conducted legal research on the underlying merits of the potential class claims, the proper measure of damages, and Defendants' affirmative defenses. *Id*.

Throughout their arm's length settlement negotiations, which included three private mediations with well-respected mediators in the industry, the parties vigorously exchanged facts and arguments in support of their claims and defenses. [Moreno Decl. ¶ 7.] These factors favor preliminary approval. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

4.  **Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4, 5, and 6)**

Although Plaintiffs' Counsel believe their case is strong, as with all litigation, it is subject to considerable risk. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007); *Kirby*, 2020 U.S. Dist. LEXIS 114356, at *9 (N.D.N.Y. 2020) ("The Court also considers the substantial risks that Plaintiffs face in prosecuting

17

this case through trial, including the fact that Defendant vigorously denies the allegations, that they may not have succeeded in maintaining a class or collective through trial, and that trial would involve significant risks for Plaintiffs as to liability, damages, and recoverability of any potential award."). For example, at trial Plaintiffs would face disputes over whether Managers were misclassified as exempt from overtime, and whether all of the Phoenix Nexus Defendants were a joint and/or single employer. While Plaintiffs believe they would ultimately prevail, Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.

Moreover, another risk of continued litigation for Plaintiffs was the possibility that they would not be able to collect on a judgment, given that the Defendant entities are no longer operating their Little Caesar's pizzeria franchises and asserted financial hardship throughout the mediation process. [Moreno Decl. ¶ 9.]

The proposed settlement alleviates these uncertainties. *See e.g.*, *Rodriguez v. Cpi Aerostructures*, 2021 U.S. Dist. LEXIS 218246, at *14-15 (E.D.N.Y. 2021) ("finding the fourth, fifth, and sixth *Grinnell* factors favored settlement where plaintiffs' counsel acknowledged that defendants raised colorable arguments in their defense, that no class yet existed, and that a trial on the merits would likely involve an appeals process which posed a risk of uncertainty with respect to outcome and duration of litigation), This factor therefore weighs in favor of approval.

### 5.  <u>Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)</u>

Defendants ceased operating the Little Caesar's pizzeria franchises by September 2023, and have asserted financial hardship throughout the mediation process.. [Moreno Decl. ¶ 9.] Where "a defendant could not withstand a judgment greater than the amount provided for in the

settlement, the settlement is more likely to be reasonable, fair, and adequate.'" D'Angelo *v. Hunter Bus. Sch., Inc.*, 2023 U.S. Dist. LEXIS 131029, at *7 (E.D.N.Y. July 28, 2023). Accordingly, this factor weighs in favor of approval. Even in cases where the defendants can withstand a greater judgment than what is being paid in settlement, Courts will still approve the settlements as fair and reasonable given that, "this factor, standing alone, does not suggest that the settlement is unfair." *Baudin v. Resource Mktg. Corp., LLC*, 2020 U.S. Dist. LEXIS 146280, at *22 (N.D.N.Y. 2020) quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Under those circumstances, "the seventh *Grinnell* factor 'is neutral and does not preclude the Court from approving the settlement.'" *Ying v. All-Ways Forwarding of N.Y. Inc.*, 2025 U.S. Dist. LEXIS 61448, *30 (E.D.N.Y. Mar. 31, 2025) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)).

**6.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Defendants have agreed to settle this case for a substantial sum.  The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*,

495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Approximately 50% of Plaintiffs' damages are attributable to Plaintiffs' Wage Theft Prevention Act ("WTPA") claim (failure to provide accurate wage statements and wage notices), which would be a significant obstacle for Plaintiffs at the class certification and/or summary judgment stage. Specifically, some district courts in the Second Circuit have rejected similar claims for a failure to plead a concrete injury, while others have found the opposite. *See e.g., Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649, 2022 U.S. Dist. LEXIS 55633, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (finding plaintiffs' WTPA claims were insufficient to maintain a class action because "even if the unlawful policies were applied to all of the Class Members, Plaintiff could not demonstrate that 'the class members have suffered the same injury'…[because] it is not clear that those policies led to an 'injury' that can be recognized by a federal court.") (internal citations omitted) *cf Metcalf v. TransPerfect Translations Intl., Inc.*, 19-cv-101104 (ER) (KHP), 2023 U.S. Dist. LEXIS 54340, at *17-18 (S.D.N.Y. Mar. 29, 2023) (permitting plaintiffs' WTPA claims to go forward because plaintiffs were routinely provided with inaccurate and misleading information, which prevented them from pursuing the full amount of compensation to which they were entitled, and "'monetary harm [of this kind] is a concrete injury sufficient to show standing.'") (internal citations omitted). To the best of Plaintiffs' counsel's knowledge, this issue has not yet been substantively addressed in the Northern District of New

York, creating a substantial uncertainty for Plaintiffs with respect to this claim. Accordingly, Plaintiffs' risks includes successfully obtaining class certification, establishing joint employment of all Defendants, proving willfulness by Defendants to be awarded liquidated damages at 100%, and overcoming any challenge to the WTPA claims by proving downstream injuries resulting from Defendants' failure to provide accurate wage statements and notices. With this settlement, each Authorized Claimant will likely receive a substantial proportion of the wages they are owed. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, particularly in light of the fact that Defendants are no longer operating the pizzerias at issue and the uncertainty of the WTPA claims which are approximately half of the damages, the settlement amount is reasonable.

Moreover, under this factor, "'[t]he dollar amount of the settlement by itself is not decisive in the fairness determination.'" *Rodriguez*, 2021 U.S. Dist. LEXIS 218246 at *16 (E.D.N.Y. 2021) quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987). Accordingly, this factor favors settlement.

Overall, the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## VI.    THE NOTICE PLAN, DISTRIBUTION PROCESS, AND RELEASE ARE APPROPRIATE

The proposed Notice complies with due process and Federal Rule of Civil Procedure 23. [Ex. B.] Notice must provide:

the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;
(ii)     the definition of the class certified;
(iii)    the class claims, issues, or defenses;
(iv)     that a class member may enter an appearance through an attorney if the member so desires;
(v)      that the court will exclude from the class any member who requests exclusion;
(vi)     the time and manner for requesting exclusion; and
(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice satisfies each of these requirements. It describes the terms of the settlement, informs the class about the allocation of funds and attorneys' fees, and provides specific information regarding the final approval hearing, provides specific information on how to object or opt-out of the action, and informs the class of any claims they will be releasing should they remain in the class. [Ex. B.] Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson v. Brennan,* No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011). The detailed information in the proposed Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Notice will be mailed by the Settlement Claims Administrator to the each Settlement Class Member within thirty (30) days of the entry of the Preliminary Approval Order by the court.  [Ex. A, ¶ 2.2(B)]. In the event that a Notice is returned to the Settlement Claims Administrator with an updated address prior to the Claim Form Deadline, the Settlement Claims Administrator will re-mail the Notice and Claim Form to that address within two days. [Ex. A, ¶ 2.2(C)]. Alternatively, if a Notice is returned to the Settlement

22

Claims Administrator with no forwarding address, the Settlement Claims Administrator will perform a standard skip trace to ascertain an updated address for the Settlement Class Member in question, and if an updated address is ascertained, will re-mail the Notice and Claim Form to that address within two days. [Ex. A, ¶ 2.2(D)].

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the proposed Order.

Dated: January 9, 2026
      New York, New York

            VIRGINIA & AMBINDER, LLP

            _____/s/_____
            James E. Murphy
            Michele A. Moreno
            40 Broad Street, 7th Floor
            New York, New York 10004
            Tel:    (212) 943-9080
            jmurphy@vandallp.com
            mmoreno@vandallp.com

            GATTUSO & CIOTOLI, PLLC
            Frank S. Gattuso
            The White House
            7030 E. Genesee Street
            Fayetteville, New York 13066
            Tel:    (315) 314-8000
            fgattuso@gclawoffice.com

            *Attorneys for Plaintiff Settlement Class*